UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Mary Oberther, *on behalf of herself and all others similarly situated,* : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> Midland Credit Management, Inc., Midland Funding, LLC, and Encore Capital Group, Inc. : <br> : <br> Defendants. : <br> : | Civil Action No.: 3:14-cv-30014 |

**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff Mary Oberther ("Oberther") respectfully submits this Memorandum in Opposition to the Motion to Dismiss by Defendants Midland Credit Management, Inc. ("Midland Credit"), Midland Funding, LLC ("Midland Funding") and Encore Capital Group, Inc. ("Encore" and, together with Midland Credit and Midland Funding, the "Midland Defendants").

**INTRODUCTION**

Plaintiff brings this action, on behalf of herself and a putative class of Massachusetts consumers, for violations of the Fair Debt Collection Practices Act (the "FDCPA" or "Act"). Plaintiff's claims arise from an October 31, 2013, debt collection letter (Doc. No. 1-1, the "Letter"), Midland Credit sent Oberther on behalf of co-Defendants Midland Funding and Encore. The Letter is an example of a form letter; identical in composition to collection letters sent to consumers throughout the country and the Commonwealth of Massachusetts. As set forth herein, the Letter violates sections 1692e(10) and g(b) of the Act because, to the least sophisticated consumer, the Letter is false, deceptive and overshadows his or her right to dispute the validity of the debt.

1

# FACTS

*The Parties*

Oberther is a resident of Springfield, Massachusetts. (Complaint ¶4). The Midland Defendants are each involved in the collection of debt and specifically in the collection of debt from Oberther and absent class members. Midland Funding is one of the nation's largest buyers of unpaid debt in the form of charged-off accounts. *Id*. at ¶5. Midland Credit is an affiliate of, and collects debt on behalf of, Midland Funding. *Id*. at ¶9. When Midland Credit sent Oberther the Letter, it acted on behalf of Midland Funding. *Id*.

Encore is the parent company of both Midland Credit and Midland Funding. *Id*. at ¶11. Through its subsidiary, Midland Credit, Encore contacts customers to collect debt on behalf of the accounts current creditor. *Id*. Here, Midland Funding owns the debts and Midland Credit and Encore collect the debt. *Id*.

*The Account and the Midland Defendants' Collection Activities*

Plaintiff opened a credit account with Capital One, N.A., used for personal purposes and such account went into arrears. *Id*. at ¶¶ 13-15. The account was sold to Midland Funding for pennies on the dollar as part of a portfolio of similar accounts. *Id*. at ¶16.

Thereafter, on or about October 31, 2013, Midland Funding, through Encore and Midland Credit, sent Oberther the Letter, titled "**NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW**." *Id*. at ¶¶ 17& 18.

In pertinent part, the front page of the Letter set forth:

_____

Call (800) 265-8825

# NOTICE OF NEW OWNERSHIP *AND* PRE-LEGAL REVIEW

Dear Mary,

On 10-21-2013, your Capital One, N.A. account was sold to Midland Funding LLC and Midland Credit Management, Inc. (MCM), a debt collection company, will be collecting on, and servicing your account.

Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation. However, such forwarding will not occur until after the expiration of the time period described on the back of the letter. Upon receipt of this notice, please call to discuss your options.

If we don't hear from you or receive payment by 12-15-2013, we may proceed with forwarding this account to an attorney.

**What do you need to do to stop this process from continuing?**

   1) Mail in $500.00 and call to set up your remaining payments.
   2) Call us to see how to qualify for discounts and payment plans.

**LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. **We encourage you to call us: (800) 265-8825.**

Sincerely,

Hector Torres. Division Manager
**(800) 265-8825**

This account may still be reported on your credit report as unpaid.

**BENEFITS OF PAYING**

➢ **This may be your last chance to work with us before the account goes to an attorney**

➢ **Get rid of this debt and get on with your life**

   *Once your account is paid.*

➢ **All collection calls and letters on this account will stop!**

➢ **After receiving your final payment, we will consider the account PAID IN FULL and the three major credit reporting agencies will be updated accordingly.**

**CALL US TODAY!**

**(800) 265-8825**

_____

(the Letter).

3

On its reverse side, the Letter set forth the notifications required by 15 U.S.C. §1692g(a):

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt or any portion thereof, MCM will assume this debt to be valid.

If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or Judgment.

If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

*Id*.

On the bottom of the reverse side, the Letter concluded:

**IF YOU LIVE IN MASSACHUSETTS, THIS APPLIES TO YOU:**

NOTICE OF IMPORTANT RIGHTS: YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR PLACE OF EMPLOYMENT. ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY TEN (10) DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST POST MARKED OR DELIVERED WITHIN SEVEN (7) DAYS OF SUCH REQUEST. YOU MAY TERMINATE THIS REQUEST BY WRITING TO MIDLAND CREDIT MANAGEMENT, INC.

*Id*.

## ARGUMENT

### I. STANDARD OF REVIEW

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.,* 496 F.3d 1, 5 (1st Cir. 2007) (*citing Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true . . ." *Id.* at 555 (citations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly,* 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC,* 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Whether the language in a collection letter is false misleading or contradicts or overshadows a validation notice from the perspective of the least sophisticated consumer is a question of law for the court to decide. *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 147 (3d Cir. 2013); *Shapiro v. Dun & Bradstreet Receivable Mgmt. Servs., Inc.*, 59 F. App'x 406, 407 (2d Cir. 2003); *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997); *see also Pollard v. Law Office of Mandy L. Spaulding*, 2013 WL 4780078, *3 (D. Mass., Sept. 9, 2013).

## II. THE FDCPA AND THE LEAST SOPHISTICATED CONSUMER STANDARD

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Because the FDCPA is "remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013)(citation omitted); *see also Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011); *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002); *Hamilton v. United Healthcare of La.*, 310 F.3d 385, 392 (5th Cir. 2002).

The FDCPA imposes "strict liability on debt collectors for their violations" and "[a] plaintiff need not show intentional conduct by the collector or actual damages." *Harrington v. CACV of Colorado, LLC*, 508 F. Supp. 2d 128, 132 (D. Mass. 2007) (internal citations omitted).

District courts within this Circuit utilize the objective test of the "least sophisticated consumer" to determine if a communication is false, deceptive or misleading under the FDCPA.

*See e.g., Pollard*, 2013 WL 4780078 at *2 ("When considering whether a particular collection notice violates sections 1692e and 1692g of the FDCPA, courts look to whether the objective 'least sophisticated debtor' would find the notice improperly threatening or misleading.") (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)); *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 54 (D. Mass. 2012); *Devlin v. Law Offices Howard Lee Schiff, P.C.*, 2012 WL 4469139, *5 (D. Mass., Sept. 25, 2012); *Martin v. Sands*, 62 F. Supp. 2d 196, 199 (D. Mass. 1999).

The least sophisticated consumer standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor" (*Terran,* 109 F.3d at 1432) and "is designed to protect all consumers, 'the gullible as well as the shrewd,' while at the same time protecting debt collectors from liability for 'bizarre or idiosyncratic interpretations of collection notices' " (*Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998) (*quoting Clomon* 988 F.2d at 1318-20).

### III. ENCORE IS VICARIOUSLY LIABLE FOR THE ACTS OF MIDLAND CREDIT AND MIDLAND FUNDING

As an initial matter, the Complaint sets forth a claim against Encore which is vicariously liable for the acts of Midland Credit. Encore need not have sent the Letter for it to be liable under the FDCPA because an "entity that 'itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf.' " *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515-16 (S.D.N.Y. 2013) (*quoting Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3d Cir. 2000)); *see also Fritz v. Resurgent Capital Servs.*, *LP*, 955 F. Supp. 2d 163, 177 (E.D.N.Y. 2013); *Pierce v. Calvary SPV I, LLC*, 2013 WL 6773632, *4-5 (W.D. Pa., Dec. 20, 2013).

Plaintiff alleges that Encore is the parent company of Midland Credit and Midland Funding. (Complaint ¶ 11). Through those entities, Encore contacts customers in attempts to collect debts on behalf of creditors. *Id*. As to Oberther and the class, Plaintiff alleges that "[h]ere, the entity known as Midland Funding owns the debts, Midland Credit and Encore collect the debt." *Id*. Thus the Letter is on Midland Credit letterhead and is sent on behalf of Midland Funding *and* Encore. The precise counters of the relationships between the three are not currently known to the Plaintiff before discovery. However, Plaintiff alleges sufficient fact to show that each is a debt collector in its own right and therefore is vicariously liable for unlawful collection activities carried out on its behalf.

## IV.  THE LETTER IS FALSE AND DECEPTIVE UNDER 15 U.S.C. § 1692e(10)

Section 1692e(10) of the FDCPA prohibits the use "use of any false representation or deceptive means to collect ... any debt." 15 U.S.C. § 169e(10). A representation from a debt collector is deceptive "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir. 1996); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011); *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008). The fact that terminology in the representation is "vague or uncertain will not prevent it from being held deceptive" under the FDCPA. *Russell*, 74 F.3d at 35. Here, the Letter is deceptive because it can be reasonably read to convey different time periods within which the account will be sent to an attorney.

The Letter advises that the account may be sent to an attorney "in your state" but the referral "will not occur until after the expiration of the time period described on the back of the letter." Proceeding reasonably, the least sophisticated consumer reading the front of the Letter understands that that referral to an attorney in their state will occur after some unspecified time period the consumer can discern by reading the rear of the Letter. The consumer then reasonably

7

turns the Letter over to find this unspecified time period. There, he or she will see a thirty-day period within which they can dispute the validity of the debt. So far so good. However, the consumer, proceeding reasonably, will also see – under the capitalized bolded heading "**IF YOU LIVE IN MASSACHUSETTS THIS APPLIES TO YOU**" – a "ten (10) day" period during which oral requests to cease calling placed of employment will be honored. The question for the least sophisticated Massachusetts consumer becomes which period was the front of the Letter referring to? The question for this Court is whether it is reasonable for the least sophisticated consumer to incorrectly conclude that the front referred to the ten-day period?

Plaintiff suggests that it is entirely reasonable – indeed it is likely – for the Massachusetts least sophisticated consumer to be confused or to draw the wrong conclusion. Most obviously, the ten-day period is in the section titled "if you live in Massachusetts this applies to you." The least sophisticated consumer sees the front of the Letter speaking about referral to an attorney in her state within some time period, she looks to the rear to find out the time period and sees a state specific disclosure with a ten-day period. It would be *unreasonable* and *idiosyncratic* for the Massachusetts consumer to ignore that time period and believe it did not apply to her. The consumer would read the disclosure and be befuddled, there is a time period but it does not refer to attorney referral. The consumer reads the rest of the rear-side and sees a separate thirty-day period but that does not refer to attorney referral either. To break the tie, the most reasonable course for the Massachusetts consumer is to go with the disclosure aimed specifically at them. Whatever the legality of the Letter in other jurisdictions, it would confuse Massachusetts consumers in particular.

The Midland Defendants assert that the reasonable unsophisticated consumer would ignore the specific Massachusetts language in favor of the general thirty-day dispute language.

(Doc. No. 16 at 18-19). Undoubtedly the consumer would be confused by the Massachusetts disclosure because it does not relate to attorney referral, but that is entirely the point because neither does the thirty-day dispute notice. Bearing in mind that the least sophisticated consumer is ignorant of the law, the FDCPA and Massachusetts specific requirements, he or she is not going to read the letter with prior knowledge about their rights. The consumer is left to figure out which time period applies. On the one hand is a state specific disclosure. On the other is a general purpose disclosure. It is reasonable for the consumer to adopt the state specific and be utterly bewildered about when attorney referral will occur.

The Midland Defendants assert that they cannot have violated the FDCPA by including the Massachusetts disclosure and complying with state law (Doc. No. 16 at 17). This too misses the point. By itself, there is nothing wrong with the state disclosure on the rear and Plaintiff does not claim there is. There is something wrong, however, with the language on the front of the Letter because it makes vague reference to time periods on the rear when the rear has more than one time period. The problem is not with the Massachusetts specific lanauge but with the extra language used by the Midland Defendants.

Moreover, deception and confusion would have been easily avoided if the Letter said "such forwarding will not occur until after the expiration of the dispute period described on the back of the letter." That would have been a clear and straightforward disclosure that the Defendants could have used. The reason why the Letter uses opaque references to "time periods on the reverse" instead is self-evident. It is the same reason why the validation rights are placed on the back of the Letter and not the front: debt collectors do not want consumers disputing, they want them paying. While getting consumers to pay is the Midland Defendants' right, they cannot permit their letters to devolve to inherently contradictory gibberish.

The reasonable least sophisticated consumer would read the Letter as stating "we are considering referring this account to an attorney in Massachusetts but will not do so until the end of the time period on the reverse." The reverse has two different time periods, one thirty-day period and one ten-day period related to Massachusetts consumers. Neither the front nor the rear of the Letters states which period relates to attorney referral and a Massachusetts consumer is going to rely on the disclosure tailored to him or her. Thus, because the Letter is susceptible to two or more reasonable readings by the least sophisticated consumer, one of which is inaccurate, it is deceptive and violates 15 U.S.C. § 1692e(10).

## V. THE LETTER OVERSHADOWS VALIDATION RIGHTS IN VIOLATION OF 15 U.S.C. § 1692g(b)

### A. Right to Dispute and Overshadowing

"As a response to 'the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid,' the Act gives the consumer the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt." *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 89 (2d Cir. 2008) (*quoting* S. Rep. No. 95–382, at 4 (1977), 1977 U.S.C.C.A.N. 1695, 1699); 15 U.S.C. § 1692g. To trigger the mechanism whereby the debt collector must stop all its activities and verify the validity of the debt, the consumer must send a written dispute letter and must do so within a single thirty-day window. 15 U.S.C. § 1692g. After that thirty-day period, dispute letters lose the power to force a debt collector to verify the debt, and collectors can assume the debt is valid.

The right to dispute and demand verification may be the most important right a consumer has under the FDCPA. As the Consumer Financial Protection Bureau's ("CFPB") 2014 Annual FDCPA Report catalogues, the number one consumer complaint received by the CFPB in regards to debt collectors is "[c]ontinued attempts to collect debt not owed." *See* CFPB Fair Debt

Collection Practices Act Annual Report for 2014, Table 1 (March 20, 2014) (34% of all complaints).[1]

Because the right to dispute and demand verification is critical but temporally limited, the FDCPA provides that "any collection activities and communication during the 30–day [validation] period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . ." 15 U.S.C. § 1692g(b). As courts have held, a debt collector does not comply with 15 U.S.C. § 1692g with mere " 'inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor.' " *Miller v. Payco-Gen. Am. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir. 1991) (*quoting Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir. 1988)); *see also Russell*, 74 F.3d at 35..

A letter is overshadowing or contradictory "if it would make the least sophisticated consumer uncertain as to her rights." *Russell*, 74 F.3d at 35; *see also Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000); *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 630 (7th Cir. 2009); *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998).

B. <u>The Letter Overshadows</u>

By its plain terms, the Letter presents the consumer with contradictory messages regarding her options to stop the process of attorney referral. In doing so, the Letter would cause the least sophisticated consumer to be uncertain as to her validation rights.

The Letter, in a large bold headline, warns that the account is now in "Pre-Legal Review." It continues with the notification that Midland Credit "is considering forwarding this account to an attorney in your state for possible litigation." In bold lettering it then sets forth "**[w]hat do you need to do to stop this process from continuing?**" and answers its own

---

[1] Available at http://files.consumerfinance.gov/f/201403_cfpb_fair-debt-collection-practices-act.pdf.

question with two options: "1) Mail in $500.00 and call to set up your remaining payments [or] 2) Call us to see how to qualify for discounts and payment plans."

This is false because the consumer has another option; to lodge a written dispute with the debt collector which will cause the collector to cease all activity, verify the debt to confirm that what it thinks is owed is actually owed, and send such verification to the consumer. By stating that the consumer can take only those two options, the Letter excludes, or at the very least diminishes, the actual third option of disputing the debt. A plain reading of the Letter – front and back – shows that only payment and a call can stop the process of attorney referral. To be accurate and avoid overshadowing, the Letter would need to set forth the third course the consumer would "need" to take to stop the process from continuing: "3) exercise your dispute rights as set forth on the reverse side of this letter."

While statutorily required validation language is found on the reverse, it is contrary to the options the consumer "needs" to take on the front of the Letter. Thus, the consumer is presented with confusing messages. On the one hand, the clear import of the Letter is that only payment and calling in to discuss payment will avoid attorney referral. On the other is the right to dispute. This leaves up in the air what happens if the consumer disputes but does not call in and make arrangements; will the Midland Defendants continue with attorney referral? The consumer might well wonder what good it would do her to dispute the debt if only payment or calling in to discuss payment can stave off further escalation and attorney involvement. The statements on the front of the letter, when read in conjunction with the validation notice on the rear, would "make the least sophisticated consumer uncertain as to her rights" to dispute and therefore the Letter violates the FDCPA. *Savino*, 164 F.3d at 85.

*Vu v. Diversified Collection Servs., Inc.*, is instructive. There, the debt collection letter set forth:

> We are requesting that you telephone this office at 209–858–3678, regarding your account rather than continuing to correspond by mail. We must talk to you in order to finalize any arrangements necessary to retire your obligation, otherwise we cannot intelligently evaluate your present situation.

293 F.R.D. 343, 349 (E.D.N.Y. 2013). The court found that the letter placed "improper emphasis on telephonic communication" and conflicted with the validation notice on the letter's reverse side. *Id*. at 359-60. The court acknowledged that merely instructing a consumer to contact the debt collector by phone does not overshadow. *Id*. However, "the notice crosses the line when 'emphasis is placed on the phone number in any way.' " *Id*. (*quoting Ehrich v. I.C. System, Inc.,* 681 F. Supp. 2d 265, 271–72 (E.D.N.Y. 2010). Specifically, the *Vu* court found that the letter placed improper emphasis when it asked the consumer to refrain from communicating by mail. *Id*.

Here, the Letter, taken as a whole, likewise placed improper emphasis on calling in. First, the context of the Letter is that the account is in pre-legal review. Second, the Letter threatens attorney referral and sets forth only two actions the consumer "needs" to take to avoid attorney referral, payment and a call or just a call. Third, on its front, in four places and in sometimes oversized font, the Letter tells the consumer to call (800) 265-8825. The clear impact of the front of the Letter is that to stop attorney referral they only thing the consumer can do is "call us today!" This goes beyond providing consumers "the option or convenience of contacting Defendant by phone" (*Vu*, 293 F.R.D. at 359), it is leveraging the implicit escalation to attorney involvement in order to get the consumer to call in. It is also placing improper emphasis on calling in over the consumer's right to submit a written dispute. The Letter therefore overshadows that right in violation of section 1692g(b).

The Midland Defendants assert that "nearly identical language has been found not to violate the FDCPA." (Doc. No. 16 at 12). Each of the cases Defendants rely on for this argument is unavailing and distinguishable. First, in *Rodriguez v. Fulton Friedman & Gullace, LLP*, 2012 WL 3756589 (S.D. Tex., Aug. 28, 2012) the section 1692g(b) claims before the Court were materially different. There, the Plaintiff argued that the validation notice's mere placement on the rear of the collection letter violated the FDCPA as did the validation notice's smaller font and the letter's provision of different addresses. Oberther does not make any of these arguments. Second, in both *Sarno v. Midland Credit Mgmt., Inc.*, 2011 WL 349974, *1 (S.D.N.Y., Jan. 31, 2011) aff'd, 435 F. App'x 44 (2d Cir. 2011) and *Peterson v. Midland Credit Mgmt., Inc.*, 2011 WL 781538, *5 (N.D. Ind., Feb. 28, 2011), the plaintiffs alleged that a collection letter's reminder that payment within thirty days does not void the right to dispute overshadowed the right to dispute. Oberther does not make this argument or challenge any similar language.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants Motion To Dismiss the Complaint in its entirety and the accompanying request for fees and costs. To the extent that the Court finds Plaintiff's complaint factually deficient, Plaintiff requests leave to amend her Complaint if appropriate.

Dated: April 18, 2014

        Respectfully submitted,
        By  */s/ Sergei Lemberg*
        Sergei Lemberg
        Lemberg Law, LLC
        1100 Summer Street, 3rd Floor
        Stamford, CT 06905
        Telephone: (203) 653-2250
        Facsimile: (203) 653-3424
        Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

This is to certify that, on April 18, 2014, the foregoing was served through the CM/ECF system on the following:

Kara G. Thorvaldsen
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
260 Franklin Street
14th Floor
Boston, MA 02110-3112

*Attorneys for Defendant*

            By  */s/ Sergei Lemberg*
               Sergei Lemberg